UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-87-GWU

BETTY J. SHEPHERD, PLAINTIFF,

VS.   **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

Betty Jo Shepherd brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disabled Widow's Insurance Benefits and for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

### LAW APPLICABLE TO WIDOW'S INSURANCE BENEFITS

The medical evidence relating to such widow's insurance benefits claims filed on or after January 1, 1991, or applications pending on or after that date, are to be evaluated under the same standards as are applied to other Title II disability claims. Omnibus Budget Reconciliation Act (OBRA) of 1990, Pub. L. No. 101-508, Section 5103. Accordingly, a review of the principles applicable to judicial review of these other claims is necessary.

1

07-87 Shepherd

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Disability Insurance Benefits or Supplemental Security Income benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520)c), 404,1521, 416.920©), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?

>    If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work-- i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656, (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion

3

is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. Section 416.965(a) and 20 C.F.R. Section 404.1563 provide that an individual with only off-and-one work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Section Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. Section 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. Section 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Section Part 404, Subpart P. Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Ibid</u>.  In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Shepherd, a 57 year-old woman with a high school education and no past relevant work history, suffered from impairments related to discogenic and degenerative disorders of the back. (Tr. 15, 18). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 16-17). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 18-19). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert William Ellis included an exertional limitation to medium level work along with such non-exertional restrictions as (1) an inability to more than occasionally climb ladders,

ropes or scaffolds; (2) a need to avoid exposure to hazardous machinery; and (3) a "limited but satisfactory" ability to maintain attention and concentration or to deal with work stresses. (Tr. 240). In response, the witness identified a significant number of jobs which could still be performed. (Id.). Therefore, assuming that the vocational factors considered by Ellis fairly depicted Shepherd's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Mark Burns evaluated Shepherd and noted that her physical and orthopedic examinations were within normal limits. (Tr. 119). Dr. Burns found no restriction with regard to sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking, and traveling. (Id.). Dr. Parandhamulu Saranga, a non-examining medical reviewer, opined that the plaintiff's physical impairments were "less than severe." (Tr. 191). The physical factors of the hypothetical question were compatible with these opinions. Dr. Rachel Eubanks of the Cloverfork Clinic, a treating physician, did not identify the existence of more severe physical limitations than those found by the ALJ. (Tr. 131-160, 194-208). These reports provide substantial evidence to support this portion of the administrative decision.

Shepherd argues that the ALJ erred in rejecting the opinion of Dr. Alan Freid, asserting that as a treating source, he was entitled to superior weight. Dr. Freid

completed an assessment form upon which he indicated that the claimant would be unable to perform a full range of sedentary level work. (Tr. 210-211). The ALJ rejected this opinion because, aside from an MRI Scan of the lumbar spine, no supporting treatment records were included with the assessment which provided objective medical data to support the very severe physical limitations. (Tr. 18). The physician's status as a treating source was not clearly established. The MRI Scan revealed a moderate disc bulge at L4-L5 and a mild diffuse disc bulge at L3-L4 with normal vertebral bodies in height and alignment. (Tr. 212). The ALJ noted the normal physical and orthopedic examination results obtained by Dr. Burns. (Tr. 17). He also noted that the treatment records from Dr. Eubanks were primarily interested in getting Shepherd to quit smoking and contained no diagnostic testing results or recommendations for rehabilitative therapies. (Id.). Therefore, under these circumstances, the ALJ properly concluded that Dr. Freid's restrictions were not entitled to controlling weight.

The ALJ also dealt properly with the evidence of record relating to Shepherd's mental status. The plaintiff notes that Psychologist Jeanne Bennett examined the plaintiff and diagnosed an adjustment disorder with depressed mood. (Tr. 115). The claimant's Global Assessment of Functioning (GAF) was rated at 50. (Id.). Such a GAF suggests the existence of "serious" psychological symptoms according the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. Bennett opined

that the plaintiff would suffer "marked" limitation in her ability to tolerate stress, "moderate" limitations in her ability to sustain attention and concentration, and "slight" impairment in her ability to interact appropriately with co-workers and supervisors. (Id.). Shepherd asserts that this opinion supports her claims of disabled status. The record was reviewed by Psychologists Ann Demaree (Tr. 161-175) and Stephen Scher (Tr. 176-190), each of whom specifically opined that the plaintiff did not suffer from a "severe" mental impairment. Demaree noted the recent deaths of Shepherd's husband and mother and indicated that her current problems were related to the grief she felt over these losses and opined that these problems would resolve and she could perform normal work activities. (Tr. 173). The plaintiff indicated in her interview with Bennett that these recent deaths were her main stressors. (Tr. 114-115). Scher, who reviewed the record three months after Demaree, noted that treatment records from the staff at the Cumberland River Comprehensive Care Center (Tr. 122-130) documented improvement in the claimant's condition, with her GAF rising to between 60 and 70 during the short period of her treatment when it was initially 50. (Tr. 188). A GAF of 70 suggests the existence of only "mild" psychological symptoms according to the DSM-IV-TR. Again, the reviewer thought that her mental problems were primarily related to grief which was resolving and would not impose long-term mental limitations. An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion. Barker v.

07-87 Shepherd

Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Therefore, the ALJ could properly reject the opinion of Bennett in favor of those of the medical reviewers.[1]

Shepherd argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Shepherd was found to be suffering from a potentially painful condition. However, even if she could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. Dr. Burns found no sign of motor dysfunction, sensory loss or reflex abnormalities upon physical examination. (Tr. 119). As noted by the ALJ, the plaintiff has only utilized over-the-counter pain medication and a mild muscle relaxant. (Tr. 17). Therefore, the medical evidence does not appear

---

[1] The Court notes that some discrepancies exist between Bennett's restrictions and the findings made in her narrative report. For example, the examiner indicated that the plaintiff's attention and concentration were intact (Tr. 113) yet later noted that she would have "moderate" limitations in these areas (Tr. 115).

11

07-87  Shepherd

sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the Court concludes the ALJ properly evaluated Shepherd's pain complaints.

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 28th day of December, 2007.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**